UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARK MOOR,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>JAMES BACA, et al.,<br><br>　　　　　　Respondents. | Case No. 3:10-cv-00401-RCJ-WGC<br><br>ORDER |

This is a counseled amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF #14). Now before the court is respondents' answer to the amended petition (ECF #28). Petitioner filed a reply to the answer (ECF #33).

**I. Procedural History and Background**

In March 1994, pursuant to a guilty plea, petitioner was sentenced to five years to life in prison for violating NRS 207.710, which prohibits the use of a minor in the production of pornography. Exh. 1.[1] *See also Moor v. Palmer*, 603 F.3d 658, 660 (9th Cir. 2010) ("*Moor I*").

In 1997, the Nevada Legislature amended the Psychological Review Panel ("psych panel") requirements for parole, with the result that petitioner was included in the expanded categories of offenders who were required to receive a psych panel certification that they are not at a high risk to reoffend in order to be considered for parole by the Nevada Board of Parole Commissioners ("parole

---

[1] Exhibits 1-10 are exhibits to petitioner's amended petition (ECF #14) and may be found at ECF #15.

board"). *Cf.* 1997 Nev. Stat., ch. 524, § 10, at 2506; id. § 22, at 2513 with NRS 213.1214; *Moor I*, 603 F.3d at 662. In 1999, pursuant to the new requirements, the psych panel certified petitioner, and the parole board granted petitioner parole. *Id.* at 660, 663. Petitioner was released on parole in April 2000 (ECF #14, p. 2; *Moor I*, 603 F.3d at 660). On April 2, 2002, petitioner was arrested for violating terms and conditions of his parole. *Id*. In June 2002, the parole board found petitioner guilty of parole violations and revoked his parole. *Id*.

The psych panel declined to certify petitioner as not a high risk to reoffend in late 2004, and the parole board denied him parole in early 2005. *Id*. In state and federal postconviction petitions, petitioner challenged the 2005 denial of parole on the basis that the psych panel requirement violated the Ex Post Facto Clause. *Moor I* , 603 F.3d at 663-664. Ultimately, the Ninth Circuit Court of Appeals held that there was no ex post facto violation. *Id*. at 664, 666. The Court concluded that while NRS 213.1214 was retroactively applied to petitioner, the psych panel requirement did not pose a significant risk of increased punishment. *Id*. at 664, 666.

In 2008, the psych panel found petitioner to pose a high risk to reoffend, and the parole board denied him parole (ECF #14, p. 2; Exh. 8). On March 16, 2009, petitioner filed a state habeas petition challenging the 2008 denial of parole. Exh. 1. The state district court denied the petition. Exh. 4. The Nevada Supreme Court affirmed the denial, and remittitur issued on December 1, 2009. Exhs. 6, 7.

On June 29, 2010, petitioner dispatched his original federal habeas petition for filing (ECF #3). Before the court is petitioner's counseled first amended petition (ECF #14), which respondents have answered (ECF #28).

**II. Legal Standard - The Antiterrorism and Effective Death Penalty Act**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

  The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011).

  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

  A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

-3-

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**III. Analysis**

In 2008, the psych panel did not certify petitioner as a low risk to reoffend, and the parole board denied him parole (ECF #14, p. 4). Petitioner in his current federal petition argues that the psych panel certification requirement, applied retroactively in his case, created at least a "significant risk" of increased incarceration, both on its face and as applied to the 2008 hearing. *Id*. He contends that the parole board's own records show that the board likely would have released petitioner but for the imposition of this certification requirement. *Id*.

Previously, NRS 200.375 required that persons convicted of sexual assault or attempted sexual assault be reviewed by the psych panel. In 1997, the state legislature repealed NRS 200.375 and enacted NRS 213.1214, requiring persons convicted of several enumerated offenses, including offenses "involving pornography and a minor pursuant to NRS 200.710 to 200.730, inclusive" to be reviewed by the psych panel. In 2001, the state legislature altered the language of the statute to require certification by the psych panel that the prisoner "does not represent a high risk to reoffend." The decision to grant parole is at the discretion of the parole board. NRS 213.1099.

The Ex Post Facto Clause, Article I, section 10 of the United States Constitution, prohibits laws that retroactively increase the penalty for a crime. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504, (1995). "A law violates the Ex Post Facto Clause if it is 1) retroactive-'it applies to events occurring before its enactment;' and 2) detrimental-it 'produces a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Brown v. Palmateer*, 379 F.3d 1089, 1093 (9th Cir.2004) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981) and *Morales*, 514 U.S. at 509, respectively). The Supreme Court has not adopted "a single formula for identifying which legislative adjustments, in matters bearing on parole, would survive an ex post facto challenge." *Garner v. Jones*, 529 U.S. 244, 252 (2000). Instead, "[t]he question is whether the amended [rule] creates a significant risk of

prolonging [the prisoner's] incarceration" and there is no constitutional violation where the legislative change produces "only the most speculative and attenuated possibility of producing the prohibited effect." *Id*. at 251 (citing *Morales*, 514 U.S. at 509). "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's opportunity to take advantage of provisions for early release." *Morales*, 514 U.S. at 506 n. 3 (internal quotation marks omitted). "[T]he question of what legislative adjustments will be held to be of sufficient moment . . . must be a matter of degree." *Id*. at 509.

**A. Challenge to 2005 Parole Denial**

In *Moor I*, the Ninth Circuit held that NRS 213.1214 was applied retroactively to petitioner because he pleaded guilty in 1994 and his eligibility for parole was clearly impacted by the law's amendment in 1997. 603 F.3d at 664. The Ninth Circuit determined that the Nevada Supreme Court's rejection of petitioner's challenge of the 2005 parole denial was not contrary to clearly established federal law. *Id*. at 664.

In *Moor I,* the Nevada Supreme Court reasoned:

> [Petitioner] claimed that the requirement that he be certified pursuant to NRS 213.1214 before he was eligible for release on parole was an ex post facto violation as his offense, use of a minor in production of pornography, was not subject to the certification requirement when it was committed in 1994.[FN 7]
>
> NRS 213.1214(1) specifically provides that the Parole Board shall not release a prisoner convicted of certain enumerated offenses on parole unless the prisoner is certified by a psych panel that he does not represent a high risk to reoffend. [Petitioner] is subject to the certification requirement.[FN 8] The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts."[FN 9] There is no ex post facto violation when the law merely alters the method of imposing a penalty and does not change the quantum of punishment.[FN 10] In the instant case, requiring [petitioner] to be certified before release on parole does not constitute an additional punishment.[FN 11] Again, to the extent that [petitioner] challenged the Parole Board's decision to deny parole, that challenge was without merit as a prisoner has no constitutional right to parole.[FN 12] Therefore, we conclude that the district court did not err in denying this claim.
>
> [FN 7] The offenses required to be presented to a psych panel were expanded in 1997. Compare 1991 Nev. Stat. ch. 16, § 1, at 18 (providing that a person convicted of sexual assault may not be paroled unless a board certifies that the person is not a menace to the health, safety or morals of others) (NRS 200.375 repealed and replaced by NRS 213.1214) to 1997 Nev. Stat. ch. 524, §10, at 2506-07 (NRS 213.1214).
>
> [FN 8] *See* NRS 213.1214(5)(e).

> [FN 9] *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)); *see also Stevens v. Warden*, 114 Nev. 1217, 969 P.2d 945 (1998).
>
> [FN 10] *See Land v. Lawrence*, 815 F.Supp. 1351 (D. Nev. 1993) (rejecting a prisoner's ex post facto challenge to the certification requirement of NRS 200.375).

Case No. 3:07-cv-00151-BES-RAM, ECF #4, pp. 27-28.

In affirming, the Ninth Circuit explained:

> [W]e conclude that the Nevada courts' denial of habeas relief in this case did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as embodied in Supreme Court precedent. The Nevada Supreme Court rejected [petitioner's] ex post facto claim, reasoning that "[t]here is no ex post facto violation when the law merely alters the method of imposing a penalty and does not change the quantum of punishment," and that "requiring [petitioner] to be certified before release on parole does not constitute an additional punishment." The court did not explicitly set out the "controlling inquiry" of "whether retroactive application of the change . . . created 'a sufficient risk of increasing the measure of punishment.' " *Garner*, 529 U.S. at 250, 120 S.Ct. 1362, citing *Morales*, 514 U.S. at 509, 115 S.Ct. 1597. Nevertheless, the Nevada Supreme Court did cite *Morales*, suggesting that it identified the governing rule, or at least did not apply a rule that contradicted the *Morales* rule.

*Moor I*, 603 F.3d at 664.

The Ninth Circuit further determined that it was not an unreasonable application of Supreme Court precedent to conclude that applying the psych panel requirement to petitioner would not create a sufficient risk that he would serve more prison time than if he was evaluated under the standard applicable at the time of his conviction. *Id*. at 665. The Ninth Circuit considered petitioner's argument that the psych panel constitutes a "high hurdle" to be cleared before the parole board may exercise its discretion, similar to the hurdle found unconstitutional in *Miller v. Florida*, 482 U.S. 423, 435 (1987). *Id*. In *Miller*, the U.S. Supreme Court held that a law that retroactively revised sentencing guidelines and required a judge departing from the guidelines to set forth clear and convincing reasons violated the ex post facto prohibition. *Miller*, 482 U.S. at 435. The Ninth Circuit responded:

> However, the "hurdle" represented by the [psych] panel here is not particularly onerous; the [psych] panel need only certify that the inmate does not pose a high risk of reoffending. Moreover, it is even less likely that the procedures would pose a significant risk of prolonging incarceration for prisoners who, like [petitioner] have already violated the terms of their parole once before.

-6-

*Moor I*, 603 F.3d at 665.

Petitioner also asserted that the psych panel review was similar to that in *Brown v. Palmateer*, 379 F.3d 1089 (9th Cir. 2004), which also involved two sets of parole decisionmakers applying two different sets of standards. *Id*. at 665-666. In *Brown*, the new parole law allowed the board to postpone a parole date if the board thought the prisoner suffered from a mental or emotional disturbance that made him or her a danger to the community, regardless of whether the prisoner had a professional diagnosis one way or the other and even if the disturbance was not severe. Brown, 379 F.3d at 1095. The Ninth Circuit concluded that the impermissible change in law in *Brown*

> represented a far greater threat of increased incarceration. . . . under [NRS] 213.1214, the board retains the same basic discretion to grant or deny parole; the legislature simply requires a specialized panel (including a psychologist or psychiatrist) to first make a threshold inquiry of whether the inmate poses a "high risk to reoffend," which would be relevant to the board's [NRS] 213.1099 analysis anyway.

*Moor I*, 603 F.3d at 666.

Accordingly, the Ninth Circuit held that the psych panel review does not create a significant risk of increased punishment on its face and that petitioner expressly argued that further fact finding was unnecessary and thus chose to rest his ex post facto claim on a facial challenge to the statute. *Id.* The Court further concluded that the Nevada Supreme Court's denial of habeas relief did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. *Id.*; 28 U.S.C. §2254(d).

**B. Challenge to 2008 Parole Denial**

After the psych panel did not certify petitioner as a low risk to reoffend, and the parole board denied him parole in 2008, petitioner filed a second state postconviction petition. Exh. 1. He now claims in the instant federal petition, *inter alia*, that in rejecting his challenge to the 2008 parole denial, the Nevada Supreme Court applied the wrong legal standard (ECF #14, p. 4). As such, he argues that the deferential standard of federal review under § 2254 (d)(1) does not apply.

The Nevada Supreme Court affirmed the denial of his claim as follows:

> In his petition, [petitioner] claimed that the certification requirement of NRS 213.1214 for purposes of parole eligibility constituted an ex post facto violation.
>
> Based upon our review of the record on appeal, we conclude that [petitioner's] claim for relief lacked merit. Parole is an act of grace of the state, and there is no cause

-7-

of action permitted when parole has been denied. See NRS 213.10705; *Niergarth v. Warden*, 105 Nev. 26, 768 P.2d 882 (1989). NRS 213.1214 requires a sex offender to be certified by a Psych Panel prior to being eligible for release on parole. [Petitioner] acknowledged that his conviction involved the use of a minor in the production of pornography in violation of NRS 200.710. Thus, [petitioner] was subject to the certification requirements pursuant to NRS 213.1214(5)(e). There was no ex post facto violation because the certification requirement does not change the quantum of punishment, but merely alters the method of imposing the penalty. *See Land v. Lawrence*, 815 F.Supp. 1351 (D. Nev. 1993) (rejecting a prisoner's ex post facto challenge to the certification requirement of former NRS 200.375 (codified in 1997 as 213.1214)). Therefore, we affirm the order of the district court denying the petition.

Exh. 6 at 1-2.

Petitioner argues here that the Nevada Supreme Court did not apply or cite *Morales* or any other U.S. Supreme Court decision (ECF #14, p. 7). Petitioner acknowledges that the fact that the state supreme court did not cite relevant U.S. Supreme Court authority does not make the decision "contrary to" clearly established federal law. *Early v. Packer*, 537 U.S. 3, 8 (2002). However, he claims that: "the state court relied on an outdated and patently incorrect ex post facto analysis. The court's analysis was 'contrary to,' or at least an 'unreasonable application of' the clearly established 'sufficient risk' standard of *Morales*" (ECF #14, pp. 7-8).

In the context of adjudicating respondents' motion to dismiss, this court previously concluded that, in his amended petition, petitioner failed to demonstrate that the Supreme Court of Nevada's decision regarding the 2008 parole denial was contrary to clearly established federal law (ECF #27, p. 17). Having carefully considered petitioner's arguments set forth in his reply to the answer, this court remains unpersuaded.

As this court explained in its previous order, in *both* Nevada Supreme Court decisions, the court referenced the background principle that a prisoner has no constitutional right to parole because parole is an act of grace in the state of Nevada. This is a correct statement of law, and it does not indicate that the state supreme court applied the wrong legal analysis or decided the ex post facto claim on that basis. Petitioner argued in his state postconviction petition challenging the 2008 parole denial that he was denied due process of law and that he had a protected liberty interest under due process in his right to apply for parole. Exh. 1 at 7. In affirming the denial of his claims, the Nevada Supreme Court merely clarified that a prisoner has no constitutional right to parole.

1    The Nevada Supreme Court also stated in both decisions that no ex post facto violation exists
2 when the law merely alters the method of imposing a penalty and does not change the quantum of
3 punishment. Case No. 3:07-cv-00151-BES-RAM, ECF #4, pp. 27-28; Exh. 6 at 1-2. The state supreme
4 court cites to *Land v. Lawrence,* 815 F.Supp. 1351 (D. Nev. 1993), for this proposition in its decision
5 rejecting the 2008 claim at issue here. Exh. 6 at 1-2. In *Land*, this court considered a civil rights
6 complaint filed pursuant to 42 U.S.C. § 1983 in which a Nevada state prisoner presented essentially the
7 same challenge to the state law as is presented here. 815 F.Supp. at 1352. In *Land*, the plaintiff was
8 convicted of attempted sexual assault in 1985. *Id.* In 1991, then-NRS 200.375 was amended to require
9 that inmates convicted of *attempted* sexual assault–previously the statute had only applied to inmates
10 convicted of sexual assault–also be certified by the psych panel as at a low risk to reoffend in order to
11 be considered for parole by the parole board. *Id.* This court in *Land* inquired as to whether the law
12 changed the quantum of punishment (citing *Dobbert v. Florida*, 432 U.S. 282, 293-94 (1977)), and
13 concluded that it did not "'increase the punishment for which [plaintiff was] eligible' as a result of his
14 conviction." *Id.* at 1353, quoting *Collins v. Youngblood*, 497 U.S. 37, 44 (1990).

15    Contrary to petitioner's assertion, the U.S. Supreme Court emphasized this same core principle
16 in *Morales* and in *Garner*. In *Morales*, the Court stated: "After *Collins*, the focus of the ex post facto
17 inquiry is . . . whether any such change . . . increases the penalty by which a crime is punishable."
18 *Morales*, 514 U.S. at 506 n.3. The Court held that the California law in question in *Morales* created
19 "only the most speculative and attenuated risk of increasing the measure of punishment attached to the
20 covered crimes." *Id.* at 514. The Court in *Garner* reached a similar conclusion regarding a Georgia
21 statute on its face and remanded because in that instance the petitioner had argued that he had not been
22 permitted sufficient discovery to prove his as-applied challenge. 529 U.S. at 257. Nothing in *Morales*
23 or *Garner* diminishes the core principle that the Nevada Supreme Court invoked; in *Morales* and
24 *Garcia* the U.S. Supreme Court applied that same core principle to the contexts presented.

25    In sum, the Ninth Circuit has already considered the same language in the Nevada Supreme
26 Court's decision in *Moor I* and found it not contrary to clearly established federal law as embodied in
27 Supreme Court precedent. The Nevada Supreme Court considered materially indistinguishable facts
28 with respect to the 2008 parole denial, and petitioner has failed to demonstrate that the lack of citation

to *Morales* renders the Nevada Supreme Court's decision contrary to clearly established federal law. *Morales* and *Garner* in fact reaffirm the core focus of the ex post facto analysis cited by the Nevada Supreme Court.

Finally, the court notes that petitioner also argues that, while *Moor I* was expressly a facial challenge to the statute, he now challenges the law "as applied." This court however, is unconvinced that the Ninth Circuit's analysis in *Moor I* is fairly viewed as purely a facial determination. While the Court found NRS 213.1214 was not, on its face, an ex post facto violation, the Court further found the Nevada Supreme Court's decision was not objectively unreasonable when it concluded that application of the rule to petitioner would not create a more substantial risk of more prison time than if he had been evaluated under the earlier parole standards. *Moor I,* 603 F.3d at 665. The Court further concluded that it was even less likely that the procedures posed a significant risk of prolonging incarceration for prisoners who, like petitioner, had previously violated the terms of their parole. *Id*. This court agrees with respondents that the fact that petitioner did not present additional facts to the Ninth Circuit or seek remand for further factual development does not necessarily limit the Ninth Circuit's analysis to a facial determination. Instead, it meant that the Ninth Circuit had no basis to remand and simply rejected the ex post facto challenge outright.

Moreover, in mounting an alleged as-applied challenge now, petitioner adds little to his previous arguments. He asserts that, with respect to his 2008 parole hearing, the psych panel determined that petitioner's risk of reoffending was high and that he should not be certified for release. Exh. 8. He argues that the parole board's independent risk assessment, however, found his risk level to be low. *Id*. Thus, the parole board did not have the option to exercise its discretion to grant parole. The court notes that while the parole board cited petitioner's prison program participation and that he had been disciplinary-infraction-free for two years as mitigating factors, it also cited several aggravating factors: the increasing severity of petitioner's offenses; that his prior prison term did not deter criminal activity; that his crime was targeted against a child or vulnerable person; repetitive criminal conduct; and his prior sex and/or violent conviction. *Id*. This court does not minimize the effect on petitioner of the 2008 parole denial, but views the 2008 denial and the *potential* that the parole board might have reached a different conclusion as scant additional evidence that the statute in question created a significant risk

of increased punishment as applied to petitioner. Petitioner has not demonstrated more than a "speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes." *Morales* at 514.

Accordingly, the petition is denied.

**IV. Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

**V. Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus (ECF #14) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and close this case.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

Dated this 30th day of April, 2015.

UNITED STATES DISTRICT JUDGE